Roger N. Behle, Jr. (174755)
Kevin D. Gamarnik (273445)
Jordan A. Liebman (317930)
**FOLEY BEZEK BEHLE & CURTIS, LLP**
15 West Carrillo Street
Santa Barbara, CA 93101
Tel:   (714) 556-1700
Fax:   (714) 546-5005
Email: rbehle@foleybezek.com
       kgamarnik@foleybezek.com
       liebman@foleybezek.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANSIE DOUGLAS, an individual; JOHN DOUGLAS, an individual,<br><br>    Plaintiffs,<br><br>  vs.<br><br>MUSIC 88, INC., a California corporation; CD BABY, INC., an Oregon corporation; GLORIA CLARK, an individual; GLORIA CLARK, as Executor of the Estate of Decedent Peter Clark; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:22-cv-08593<br><br>**COMPLAINT FOR:**<br><br>1. **Copyright Infringement—17 U.S.C. § 101, et seq.;**<br>2. **False Designation of Origin—15 U.S.C. § 1125;**<br>3. **Contributory Copyright Infringement;**<br>4. **Vicarious Copyright Infringement;**<br>5. **Unfair Business Practices—Cal. Bus. & Prof. Code § 17200, et seq.;**<br>6. **Unfair Competition—15 U.S.C. § 1125(a)**<br><br>**JURY TRIAL DEMANDED** |

## Introduction

1. Plaintiffs Nansie Douglas and John Douglas, by and through their undersigned attorneys, bring this action seeking, among other things, injunctive relief, monetary damages, costs, and attorneys' fees based on Defendants Music 88, Inc. (hereafter "Music 88"), CD Baby Inc. (hereafter "CD Baby"), and Gloria Clark, in her individual capacity, and as executor of the estate of Peter Clark, deceased's (collectively, "Defendants") copyright infringement and unfair business practices.

## Parties

2. Plaintiff Nansie Douglas is an individual residing in Santa Barbara County, California.

3. Plaintiff John Douglas is an individual residing in Santa Barbara County, California.

4. Defendant Music 88, Inc., is a California corporation with its headquarters and principal place of business located in the City and County of Santa Barbara, California.

5. Defendant CD Baby, Inc., is an Oregon corporation with its headquarters and principal place of business located in Portland, Oregon.

6. Defendant Gloria Clark is an individual residing in Montecito, California, and, on information and belief, is the executor of the estate of decedent Peter Clark.

7. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs at this time. Plaintiffs therefore sue those Defendants by their fictitious names. Plaintiffs will ask leave of the Court to amend this Complaint to set forth the true names of those Defendants when ascertained. Each of the Defendants, including those named as a DOE, is responsible in some manner for the events and happenings herein referred to, including without limitation on an agency, respondeat superior,

partnership, joint venture, co-conspirator and/or alter ego theory, and is therefore responsible for the damages alleged herein.

### Jurisdiction and Venue

8. This action arises under the Copyright Act of the United States, 17 U.S.C. §§ 501, *et seq.*, as well as the Lanham Act, 15 U.S.C. § 1051, *et seq*. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1338(a). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

9. This Court has personal jurisdiction over Defendants because they have sufficient minimum contacts with California in that, among other things, (a) Defendant Music 88's principal place of business is in California; (b) Defendant Music 88 transacts a substantial amount of business in California, including within this District; (c) Defendant CD Baby transacts a substantial amount of business in California, including within this District; (d) Defendant Gloria Clark is a resident of Montecito, California; and (e) all Defendants purposefully availed themselves of the laws and markets of this District through the promotion, sale, and distribution of its services and products within California and within this District.

10. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that Defendants committed wrongs within this District, most of the Defendants' property is situated in this District, Plaintiffs suffered injury in this District, and Defendants transact and solicit a substantial amount of business within this District.

### Factual Background

**A.     Defendants**

11. Peter Clark (hereafter "Clark") was a jazz recording artist also known as "Chet DeMilo" and "Chet Clark" who rose to fame between the 1950s-1970s.

Much of Clark's work involved live engagements, including performing on cruise ships, jazz festivals, and concert halls around the world.[1]

12. Music 88, Inc. (hereafter "Music 88") is a recording studio and record label founded by Clark, who formerly served as its CEO.

13. Music 88 produces and sells, among other media, compact discs ("CDs") featuring music made by Clark and other independent artists. These CDs are displayed on Music 88's website for the public to view and purchase.

14. As of the filing of this complaint, Music 88's website lists nineteen (19) CDs for sale, featuring music by Clark as well as other artists.

15. According to Music 88's website, it sells all CDs for $12.00 plus tax and $3.50 for shipping and handling.

16. On information and belief, Defendant Gloria Clark (hereafter "Gloria") was married to Clark from 2017 until his death in 2021.

17. On information and belief, Gloria worked with Clark on all matters related to Music 88 since at least 2016.

18. Defendant CD Baby, Inc. (hereafter "CD Baby") is an online distributor of independent music.

19. On information and belief, Defendants Music 88 and CD Baby entered into an agreement in the early 2000s, whereby Music 88 provided musical compositions by various artists to CD Baby for a fee, and CD Baby thereafter distributed these compositions for sale to the public.

20. On information and belief, the general structure of this agreement was as follows: Music 88 duplicated multiple CDs (and potentially other media) for various artists and provided these duplicates to CD Baby, who would pay between $17.99 or $24.99 for them. Whatever titles CD Baby did not sell, it would return to Music 88, and a net profit would be calculated after taking into account these returns.

---

[1] Plaintiffs understand that Peter Clark passed away in August of 2021.

21.     On information and belief, over time, Music 88 accumulated a substantial library comprised of all the CDs it had duplicated for various artists.

22.     On information and belief, Clark conducted an audit of Music 88's library between 2014 and 2015 for the purpose of creating a valuation of the library and ultimately to potentially offer the library for sale.

23.     On information and belief, Music 88 also maintained a wide range materials related to the artists whose music it had duplicated on CD—demo recordings, master recordings, photos, artwork, graphics, duplicated CDs, etc.—in Clark's office and archives at Music 88's former studio, located at 149 South Quarantina St., Santa Barbara, California (the "Quarantina studio").

24.     On information and belief, Clark sold the Quarantina studio in 2018, at which time he directed all Music 88 employees, including long-time employee and fellow musician, Maitland Ward, to relocate the computer, recording and duplication equipment housed in the Quarantina studio to his guest house located at 1444 Schoolhouse Road, Santa Barbara, California (the "Schoolhouse building") and that all operations, including duplication work, continue at the Schoolhouse building.

25.     At the same time, Clark directed that all multitrack master recordings be moved to his storage building located at 138 Santa Felicia Dr., Goleta, California (the "Goleta building").

26.     On information and belief, Defendant Gloria was primarily responsible for coordinating and overseeing the moveout and sale of the Quarantina studio, including the transfer of all equipment and materials kept at the studio to several storage units and buildings, to which she held all the keys.

27.     On information and belief, since she began working with Clark and Music 88, and at all times mentioned herein, Gloria was aware that the Music 88 library contained copyrighted works owned and controlled by others. Moreover, Gloria was aware of the substantial commercial value of the library, given that she

was involved in the sales of these works, as well as the audits of two of the library's titles.

**B. Defendants' Infringement of Nansie Douglas's Copyright**

28. Plaintiff Nansie Douglas (hereafter "Nansie") is a recording artist who has written and recorded a wide-range of musical compositions, some of which she created and recorded at Clark's Quarantina studio.

29. Nansie is the owner of the following copyrighted works, both musical compositions and sound recordings, each of which substantially consists of material wholly original to Nansie and each of which is copyrightable subject matter under the laws of the United States. Nansie has complied in all respects with the Copyright Act and all of the laws of the United States governing copyrights for the following works:

| Title | Certificate Number | Date |
|---|---|---|
| a. Chapman Douglas I[2] | SRu001031365[3] | 7/30/11 |
| b. Where Are You Now, et al.[4] | SRu001032080 | 7/31/11 |
| c. Chapman II[5] | SRu001051110 | 12/19/11 |
| d. If We Could Feel It For a Moment | PAu003634620[6] | 8/24/12 |
| e. Nansie Fading Memories[7] |  | 10/20/22 |

---

[2] Contents Titles: "Cold Morning Dew"; "What Will This Day Bring"; and "Please Stay".
[3] Shared with Plaintiff John Douglas.
[4] Contents Titles: "Am I Chasing Rainbows?"; "Falling"; "Gentle Rain"; "Your Love I Still Taste"; "Where Are You Now"; "You Pierced My Heart"; and "Guide Me Through".
[5] Contents Titles: "City Cowgirls"; "What Am I Supposed To Do"; "Fading Memories"; and "Cold Cold Heart".
[6] Shared with Plaintiff John Douglas and Noreen Flowers.
[7] Contents Titles: "You Pierced My Heart"; "Each Drop of Falling Rain"; "Wild Horses"; City Cow Girls"; "Falling"; "Fading Memories"; "Cold Morning Dew"; "Am I Chasing Rainbows"; "She'll Have To Go"; "You Occupy My Mind"; "I'd Rather Go Blind"; "Cold Cold Heart"; "Gentle Rain"; "If We Could Feel It For A Moment"; "Let Me Be The One"; "What Am I Supposed To Do"; "You Love I Still Taste"; "Guide Me Through"; and "What Will This Day Bring".

30. At all times herein mentioned, Plaintiff Nansie is and has been the owner of all right, title, and interest to each of the copyrights (musical compositions and sound recordings) identified above, except as to those copyrights which she shares with other artists.

31. Nansie met Clark in February of 2012 in Santa Barbara, at a Sunday event held by the Santa Barbara Jazz Society, a non-profit Jazz organization in Santa Barbara, California.

32. At this event, Nansie and Clark discussed the music business and she shared with him that she had more than twenty (20) musical compositions that she had recorded with various local musicians.

33. Clark informed Nansie he wanted to listen to her music, so several days later, she provided Clark with a CD which contained recordings of this music.

34. These recordings also featured other artists, including Plaintiff John Douglas.

35. A few weeks later, Clark contacted Nansie and told her he was interested in re-recording the songs with her, to which Nansie agreed. Clark and Nansie agreed that Nansie, as original author of the works, would retain all right, title and interest in the works, both musical compositions and sound recordings.

36. At this time, Nansie also provided Clark with demo recordings she had made, which Clark said would be necessary for him to properly re-record the songs. These demos provided the basis for the final recordings, and were used by Maitland Ward to build on, adding additional instruments and final vocals. This group of re-recordings was to be known as "Nansie-Fading Memories" (hereafter, the "Project" or "Fading Memories").

37. Clark began work on the Project in September or October of 2012, assigning Ward, his long-time employee and fellow musician, to start developing a recording process for Nansie's songs with Nansie.

38. Ward engineered and performed on the Project, and such services were performed on a "work made for hire" basis for Nansie. He also made master recordings of the sessions and duplicated the final CD at the Quarantina studio, also on a work made for hire basis.

39. Nansie paid musicians to play on the final recordings engineered by Maitland Ward. Nansie also paid for the cover photography for the album, while Clark paid for Ward's time spent on the Project, as well as layout graphics, CD inserts, jewel cases, and the physical CD duplicates.

40. The Project was completed at the end of 2012, at which time Clark and Music 88 pressed and delivered the final CD of the Project for Nansie. Nansie intended to personally handle, manage and control the distribution and sale of her CDs

41. The final version of Fading Memories contained the following musical compositions and sound recordings:

| | Song Title | Copyright Owner(s) |
|---|---|---|
| 1. | You Pierced My Heart | Nansie Douglas |
| 2. | Each Drop of Falling Rain | Nansie Douglas |
| 3. | Wild Horses | Nansie Douglas |
| 4. | City Cowgirls | Nansie Douglas |
| 5. | Falling | Nansie Douglas |
| 6. | Fading Memories | Nansie Douglas |
| 7. | Cold Morning Dew | Nansie Douglas and John Douglas |
| 8. | Am I Chasing Rainbows? | Nansie Douglas |
| 9. | She'll Have To Go | Nansie Douglas |
| 10. | You Occupy My Mind | Nansie Douglas |
| 11. | I'd Rather Go Blind | Nansie Douglas |
| 12. | Cold Cold Heart | Nansie Douglas |

| | | |
|---|---|---|
| 13. | Gentle Rain | Nansie Douglas |
| 14. | If We Could Feel It For A Moment | Nansie and John Douglas, Noreen Flowers |
| 15. | Let Me Be The One | Nansie Douglas |
| 16. | What Am I Supposed to Do? | Nansie Douglas |
| 17. | Your Love I Still Taste | Nansie Douglas |
| 18. | Guide Me Through | Nansie Douglas |
| 19. | What Will This Day Bring? | Nansie and John Douglas |

42. In February 2013, Nansie arranged an album release party at "SoHo Restaurant and Music Club," a local venue in Santa Barbara, and paid for the costs of the release party, including paying musicians for a live performance.

43. Although their relationship began as a business one, Nansie and Clark became friends through the years, and maintained this friendship until Clark's passing in 2021.

44. Since they began working together, Clark repeatedly reassured Nansie that he would keep and maintain the master recordings of her Project "under lock and key" and would not allow anyone, other than Nansie, to access or use the master recordings for any purpose without her consent.

45. Nansie accepted and relied upon Clark's representations.

46. At no point in time did Nansie ever license or otherwise consent to Clark or any Defendant using, copying, or distributing her musical compositions or sound recordings, and in the event consent was given, without remuneration and an accounting of any sales. And, based on her long-standing relationship with Clark, Nansie did not have reason to suspect that Clark and/or the other Defendants, might reproduce, distribute and sell her Project without her authorization. However, Defendants did exactly that and Nansie did not discover their infringement until shortly after Clark passed in 2021. Defendants kept their infringing activities quiet

and inconspicuous, hoping that Nansie would not discover that her works were being reproduced and distributed without her consent.

47. On August 15, 2021, soon after Clark died, Nansie wrote a letter to Defendant Gloria Clark's attorney, John Thyne III, demanding return of her original master recordings and other materials produced at the Quarantina studio while working with Clark and Ward.

48. On September 7, 2021, Nansie had a phone call with Thyne, wherein he stated that he had received her letter, but claimed that he and Gloria could not locate any of Nansie's master recordings or other materials.

49. On September 29, 2021, Nansie made another formal demand on Thyne via letter, wherein she listed all material retained by Clark and which she believed was in the possession of Gloria at the Schoolhouse building.

50. On October 1, 2021, Nansie received an email from someone identifying themselves only as "Dawn@emperiusreportingBMI" (hereafter "Dawn") and claiming to be part of a "national music usage library that licenses music to producers of broadcast and corporate content." On information and belief, this email was from Network Music, an American production music library owned by Universal Music Group.

51. Dawn claimed that Nansie's name and works had come up during an audit of Defendant Music 88's library, which valuation had been ordered by Clark in 2015 in an effort to sell the extensive library, and again after Clark's death. According to Dawn, Clark was previously offered $4.7 million for Music 88's library.

52. Dawn's email included an Excel Spreadsheet, showing a nine-year history of various CD Baby accounts with sales in excess of 180,000 units. Nansie was among the artists listed in this spreadsheet.

53. The spreadsheet revealed that Nansie's CD, Fading Memories, had been duplicated by Music 88 at least 1,200 times, 1,107 of these duplicates being

shipped by Music 88 to Defendant CD Baby. According to the spreadsheet, the duplicates were sold at a price of $25.00/unit.

54. On information and belief, and unknown to Nansie until October of 2021, these duplicates were pressed by Music 88 and shipped to Defendant CD Baby for fulfilment in June of 2015.

55. On information and belief, and unknown to Nansie until October of 2021, another 300 duplicates were pressed in 2019 at the Schoolhouse building.

56. On October 5, 2021, Thyne responded to Nansie's letter claiming that Gloria was not in possession of any of Nansie's master records or materials, that the Schoolhouse building had been sold, and that everything in it had been taken to the Goleta building. Thyne further claimed that, prior to his death, Clark had emptied the Goleta building.

57. Nansie has never licensed or otherwise authorized Defendants to copy, distribute, or publicly disseminate her musical compositions or sound recordings, or to make derivative works which include these compositions and/or sound recordings.

58. Defendants have profited from their unauthorized use of Nansie's copyrighted musical compositions and sound recordings through the sale of unauthorized duplicate CDs, diverting profits from any sales Nansie would make of her work, and causing substantial injury to her reputation, goodwill, and the value of her rights.

**C.     Defendants' Infringement of John Douglas's Copyright**

59. Plaintiff John Douglas (hereafter "Douglas") is a recording artist who has created numerous musical recordings, some of which he created at Clark's former studio.

60. Douglas is the owner of the following copyrighted works, both musical compositions and sound recordings, each of which substantially consist of material wholly original with Douglas and each of which is copyrightable subject matter

under the laws of the United States. Douglas has complied in all respects with the Copyright Act and all of the laws of the United States governing copyrights for the following works:

| Title | Certificate Number | Date |
|---|---|---|
| a. Occupy my mind | PAu000366086 | 1/18/82 |
| b. Chapman Douglas I[8] | SRu001031365[9] | 7/30/11 |
| c. Selected Songs 2005-2008[10] | PAu003634613 | 08/24/12 |
| d. If We Could Feel It For a Moment | PAu003634620[11] | 8/24/12 |

61. At all times herein mentioned, Plaintiff Douglas is and has been the owner of all right, title, and interest to each of the registered copyrights identified above, except as to those copyrights which he shares with other artists.

62. Douglas met Clark in or around 2004 through the Santa Barbara Jazz Society, and they developed a friendship, based on their shared love of jazz music.

63. Douglas maintained this relationship with Clark until his death in 2021, with Clark working with Douglas and his wife Nansie on Nansie's CD project.

64. This work included Clark and Music 88's rerecording of various songs of Douglas's (listed in ¶41, above) on Nansie's Fading Memories CD.

65. Clark represented to Douglas, as he did to Nansie, that he would hold Douglas's master recordings "under lock and key" for safekeeping.

66. At no point in time did Douglas license or otherwise consent to Clark or any of the other Defendants using, copying, or distributing his works.

67. Moreover, based on his long-time friendship with Clark of more than fifteen years, Douglas had no reason to suspect that Clark or the other Defendants might infringe on his copyrights until shortly after Clark passed in 2021.

---

[8] Contents Titles: "Cold Morning Dew"; "What Will This Day Bring"; and "Please Stay".
[9] Shared with Plaintiff Nansie Douglas.
[10] Contents Titles: "Brandon Islanders"; "Each Drop of Falling Rain"; "Ellwood Eagles"; "Harding Hawks"; "I Just Want to Make You Happy"; and "Nothing".
[11] Shared with Plaintiff Nansie Douglas and Noreen Flowers.

68. Based on the email Nansie received from Network Music, as well as her communications with Thyne, Douglas first learned that Defendants might have been selling his copyrighted works without authorization in October 2021.

69. Douglas has never licensed or otherwise authorized Defendants to copy, distribute, or publicly disseminate his musical compositions or sound recordings, or to make derivative works which include these compositions and/or sound recordings.

70. Defendants have profited from their unauthorized use of Douglas's copyrighted musical compositions and sound recordings through the sale of these infringing CDs, diverting profits from any sales Douglas would make of his work, and causing substantial injury to his reputation, goodwill, and the value of his rights.

## FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT
## (AGAINST ALL DEFENDANTS)

71. Plaintiffs repeat and incorporate by reference all preceding paragraphs and re-allege them here as though fully set forth herein.

72. Plaintiff Nansie Douglas is the sole owner of the copyrights in original works (musical compositions and sound recordings). Nansie has registered and/or filed to register the copyrights in her works, "Where Are You Now, et al.", "Chapman II" and "Nansie Fading Memories", and the contents contained therein.

73. Plaintiff John Douglas is the sole owner of the copyrights in original works (musical compositions and sound recordings). Douglas has registered the copyrights in his works, "Occupy my mind" and "Selected Songs 2005-2008," and the contents contained therein.

74. Plaintiffs Nansie Douglas and John Douglas have also registered the copyrights which they share for their works, "Chapman Douglas I" and "If We Could Feel It For a Moment", and the contents contained therein.

75. Defendants have willfully infringed Plaintiffs' registered copyrights by

reproducing, copying, distributing, and utilizing for purposes of trade unauthorized versions of Plaintiffs' works in violation of 17 U.S.C. § 501, et seq.

76. Defendants have received substantial monies from sales of the infringing works and otherwise.

77. All of the Defendants' acts are and were performed without the permission, license or consent of Plaintiffs.

78. Defendants' copyright infringement has caused and is causing great damages to Plaintiffs, in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of their rights, all of which are not yet fully ascertainable.

79. Plaintiffs are entitled to attorneys' fees pursuant to 17 U.S.C. § 505.

## SECOND CAUSE OF ACTION

## FALSE DESIGNATION OF ORIGIN—15 U.S.C. § 1125

## (AGAINST ALL DEFENDANTS)

80. Plaintiffs repeat and incorporate by reference all preceding paragraphs and re-allege them here as though fully set forth herein.

81. Plaintiffs have created musical compositions and sound recordings in which they own the copyrights.

82. Plaintiffs never consented to Defendants selling products featuring their works. Despite this, Defendants sold, and continue to sell, music products containing Plaintiffs' works.

83. Defendants have falsely designated the origin of Plaintiffs' copyrighted works by failing to identify Plaintiffs as the creators of said works in Defendants' products, advertising and marketing.

84. Defendants engaged in such wrongful conduct with the willful purpose of misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the goods and services offered, marketed, or distributed in connection with their online retail businesses. Defendants' conduct constitutes false designation

of origin in violation of the Lanham Act, Section 43(a), 15 U.S.C. § 1125. Defendants' conduct has confused, and is likely to confuse, the general and consuming public that the works featured in Defendants' products are Defendants', and not Plaintiffs'.

85. As a result of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer damages. Plaintiffs are entitled to injunctive relief and to an order compelling the impounding of all distribution of Defendants' unauthorized products. Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) their works are unique and valuable property which have no readily-determinable market value, (b) Defendants' advertising, marketing, and/or distribution of Plaintiffs' works constitutes harm to them such that they could not be made whole by any monetary award, and (c) Defendants' wrongful conduct, and the resulting damage to Plaintiffs, is continuing.

## THIRD CAUSE OF ACTION
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
## (AGAINST DEFENDANT CD BABY)

86. Plaintiffs repeat and incorporate by reference all preceding paragraphs and re-allege them here as though fully set forth herein.

87. Before or after the date of the filing for registration of the above-referenced copyrights and continuing to date, Defendant CD Baby (hereafter in this Third Cause of Action "Defendant") has contributorily infringed on Plaintiffs' copyrighted works. Defendant knew or should have known of the infringing activity and induced, caused, or materially contributed to the infringing conduct of another.

88. Plaintiffs are informed and believe and thereon allege, that said conduct by Defendant was and is willfully done with knowledge of Plaintiffs' copyrighted works, and/or was and is negligently done.

89. Plaintiffs have no adequate remedy at law. The conduct of Defendant, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiffs and their copyrighted works.

90. As a result of Defendant's wrongful conduct, Plaintiffs are entitled to injunctive relief and damages.

## FOURTH CAUSE OF ACTION

## VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT

## (AGAINST DEFENDANT CD BABY)

91. Plaintiffs repeat and incorporate by reference all preceding paragraphs and re-allege them here as though fully set forth herein.

92. At all times, Plaintiffs have owned all rights, title, and interest in and to the copyrighted works as set forth above.

93. Plaintiffs have complied in all respects with Title 17 of the United States Code, secured the exclusive rights and privileges in and to the above-referenced copyrights, and in compliance with the law have obtained from the Register of Copyrights the appropriate certificates of registration, constituting prima facie evidence of the validity of the copyrights and of the facts stated in the certificates.

94. Before or after the date of the filing for registration of the above-referenced copyrights and continuing to date, Defendant CD Baby (hereafter in this Fourth Cause of Action "Defendant") has vicariously infringed Plaintiffs' copyrighted works. Defendant had the right and ability to supervise the infringing conduct and Defendant had an obvious and direct financial interest in the exploitation of Plaintiffs' copyrighted works.

95. Plaintiffs have no adequate remedy at law. The conduct of Defendant, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiffs and their copyrighted works.

96. As a result of Defendant's wrongful conduct, Plaintiffs are entitled to injunctive relief and damages.

## FIFTH CAUSE OF ACTION

**UNFAIR BUSINESS PRACTICES—BUS. & PROF. CODE § 17200, ET SEQ.**

**(AGAINST ALL DEFENDANTS)**

97. Plaintiffs repeat and incorporate by reference all preceding paragraphs and re-allege them here as though fully set forth herein.

98. Defendants' wrongful conduct complained of herein constitutes unlawful, unfair, and fraudulent business practices in violation of the California Business and Professions Code, § 17200, et seq.

99. Defendants' conduct has resulted in a wrongful diversion of business, money, and/or property from Plaintiffs to Defendants.

100. Unless enjoined, Defendants will continue to deceive consumers, compete unfairly, and appropriate and use Plaintiffs' copyrighted works without authorization.

101. In connection with the matters alleged herein, Defendants have been guilty of fraud, oppression, and malice and Plaintiffs are therefore entitled to exemplary damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

**UNFAIR COMPETITION—15 U.S.C. § 1125(a)**

**(AGAINST ALL DEFENDANTS)**

102. Plaintiffs repeat and incorporate by reference all preceding paragraphs and re-allege them here as though fully set forth herein.

103. Defendants' wrongful conduct complained of herein constitutes unlawful, unfair, and fraudulent business practices in violation of the Lanham Act, Section 43(a), U.S.C. § 1125(a).

104. In connection with the matters alleged herein, Defendants have been guilty of fraud, oppression, and malice and Plaintiffs are therefore entitled to exemplary damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs John Douglas and Nansie Douglas pray for judgment, as follows:

1. That Defendants be ordered to pay Plaintiffs all damages, including future damages, that they have sustained, or will sustain, as a consequence of the acts complained of herein, as well as all profits of Defendants derived from the reproduction, copying, promotion, distribution or sale of any products or media that infringes upon Plaintiffs' copyrights;

2. An accounting be made for all profits, income, receipts or other benefit derived by Defendants from the reproduction, copying, promotion, distribution or sale of any products or other media that improperly or unlawfully infringes upon Plaintiffs' copyrights;

3. A seizure order be entered directing the U.S. Marshall to seize and impound all items possessed, owned or under the control of Defendants, their officers, agents, servants, employees, representatives and attorneys, and all persons in active concert or participation with them, which infringe upon Plaintiffs' copyrights and unfairly compete with Plaintiffs, including but not limited to all musical compositions and other media, advertisements, promotional materials, writings or other tangible materials, together with any means of reproducing thereof, which infringes upon Plaintiffs' copyrights;

4. That Defendants, their officers, agents, servants, employees, representatives, and attorneys, and all persons in active concert or participation with them, be permanently enjoined from copying,

reproducing, manufacturing, promoting, advertising, distributing, or selling, or any other form of dealing or transacting in, any media which infringes upon Plaintiffs' copyrights, from falsely designating the origin of any such works, and from conspiring amongst themselves or with any other person or entity to further such activities;

5. That Defendants be held liable to Plaintiffs in compensatory damages for all actual losses or injuries, trebled in accordance with Section 16 of the Lanham Act, 15 U.S.C. § 1117, including reasonable attorneys' fees and costs, caused by Defendants' intentional and willful false designation of the origin of Plaintiffs' works;

6. That Defendants be held to have committed unfair, unlawful, and fraudulent business practices in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(a), and California Business and Professions Code, § 17200, et seq.;

7. That Defendants pay Plaintiffs punitive damages for their intentional and willful conduct; and

8. That Plaintiffs be awarded such other and further relief as the Court deems just and proper.

Dated: November 21, 2022            FOLEY BEZEK BEHLE & CURTIS, LLP


                                    By:  */s/ Roger N. Behle, Jr.*
                                         Roger N. Behle, Jr. (174755)
                                         Attorneys for Plaintiffs

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial on all causes of action for which a jury is available under the law.

Dated: November 21, 2022          FOLEY BEZEK BEHLE & CURTIS, LLP


                                  By:  */s/ Roger N. Behle, Jr.*
                                       Roger N. Behle, Jr. (174755)
                                       Attorneys for Plaintiffs